

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

February 6, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

    Re:    *United States v. Chu & Goodgame*,
                Case No. 25 Cr. 579 (PKC)

Dear Judge Castel:

        We represent Daniel Chu, and write on an emergency basis to seek an order compelling the government to produce any seizure warrants it has used to restrain Mr. Chu and his wife's primary bank account or—as we believe to be the case—if there is no such warrant, to order the account unfrozen. The government's unilateral freezing of the account without legal process violates his Fourth, Fifth, and Sixth Amendment rights, and is contrary to well-settled forfeiture law.

## Relevant Background

        This case was indicted on December 15, 2025. The government took no steps to restrain Mr. Chu's assets at that time, and the Indictment contains (at ¶¶ 37-38) only general and substitute-assets forfeiture provisions; it does not name any property as allegedly specifically forfeitable. Over the intervening month and a half, Mr. Chu's assets remained unrestrained, and a review of his bank account statements shows that he did not engage in any improper financial transactions: he paid his living expenses and his lawyers.

        That changed on February 3, 2026, when Mr. Chu learned from his bank that his access to his family's primary bank account had been frozen without notice; the bank refused to provide any other information. We immediately contacted the government, because Mr. Chu and his wife rely on that account to pay his family's living expenses as well as ongoing legal expenses from this and related court proceedings. The government confirmed that it had sent a "letter" to the bank asking it to freeze Mr. Chu's account, with lawful process to follow.

        As of this afternoon, the government confirmed it has still not obtained a seizure warrant, filed a civil forfeiture action, or otherwise taken any lawful steps to restrain the money that Mr. Chu depends on to live.

BOIES SCHILLER FLEXNER LLP

55 Hudson Yards, New York, NY 10001 | (t) 212.446.2300 | (f) 212.446.2350 | www.bsfllp.com



## Discussion

The government's warrantless seizure of Mr. Chu's property—property that he requires, among other things, to pay for his counsel of choice under the Sixth Amendment—is improper and should be dissolved.

The government may, in certain situations, effect a Fourth Amendment seizure of property without a warrant—but only if "there is probable cause to believe that the property is subject to forfeiture" *and* some "exception to the Fourth Amendment warrant requirement would apply." 18 U.S.C. § 981(b)(2)(B)(ii). The government regularly conducts such warrantless seizure by letter, directing financial institutions and others to freeze assets on nothing more than its assertion of right. But "government seizures of property in criminal cases must comply with the Fourth Amendment. While 'the government need not obtain a judicial determination of probable cause prior to seizure,' it must establish probable cause if a defendant protests restraints on his property." *United States v. Cosme*, 796 F.3d 226, 233 (2d Cir. 2015) (quoting *United States v. Daccarett,* 6 F.3d 37, 50 (2d Cir. 1993). Although 18 U.S.C. § 981(b)(2)(B)(ii) permits the government to seize property without a warrant where an "exception to the Fourth Amendment warrant requirement would apply," the Second Circuit has made clear that "the forfeiture statute does not 'create a new exception to the fourth amendment's warrant requirement.'" *Id.* at 235 (quoting *United States v. Lasanta,* 978 F.2d 1300, 1304 (2d Cir. 1992)). Rather, "the exigent circumstances exception only permits a seizure to continue for as long as reasonably necessary to secure a warrant." *Id.* (holding that government's failure to secure a warrant violated the Fourth Amendment).

Here, the government seized Mr. Chu's bank account on Tuesday (if not earlier), but as of this afternoon had still not obtained a warrant. There is no excuse for such a delay, particularly when the seizure burdens Mr. Chu's Sixth Amendment rights and his ability to pay basic living expenses.

Further, it is hard to imagine that the government could demonstrate any exigent circumstances that could have justified a warrantless seizure of Mr. Chu's account. A review of his bank records since the date of the Indictment reveals only the payment of ordinary living expenses, legal fees, and a tax payment.

Instead, the timing of the freeze appears to have been tactical. Essentially simultaneously with freezing Mr. Chu's account,[1] the government filed a motion to intervene in the Tricolor Holdings, LLC bankruptcy in the Northern District of Texas, for the purposes of seeking a stay of certain proceedings there. In the bankruptcy, the court-appointed trustee filed a lawsuit against Mr. Chu and a motion for a preliminary injunction, which itself sought to freeze Mr. Chu's assets. Mr. Chu was preparing to litigate that motion, including by seeking appropriate discovery in advance of an injunction hearing that is scheduled for later this month. It seems clear that the government's freezing of Mr. Chu's accounts was an attempt to moot the need for a freezing injunction and end-run the Bankruptcy Court's determination of its motion, and thus to protect its witnesses from having to testify at the injunction hearing. But the desire of the government to

---

[1] The government filed its motion on February 4—the day after Mr. Chu learned of the freeze—but the government had announced its intention to intervene days earlier.



protect its cooperating witnesses from having to testify is not a legitimate exigency, nor does it fit into any other recognized exception to the Fourth Amendment warrant requirement.

Even if there were some exigency, days have now passed and the government has still not gotten the blessing of any court for its continued restraint of Mr. Chu and his wife's assets. The government's reluctance to submit to judicial supervision is understandable, because its (presumptive) theory of forfeiture is highly suspect. There can be no claim that the money in Mr. Chu and his wife's account was money taken from the lenders that are the alleged victims of the charged conduct. Rather, Mr. Chu received salary, bonus, and other compensation for his role as CEO of Tricolor. Mr. Chu did not dictate his compensation; it was reviewed and approved by the company's board of directors. The notion that a corporate executive—even one accused of serious crimes—can have *all* of his or her liquid assets restrained prior to trial because he or she received compensation from the company at which the fraud allegedly occurred is a remarkable proposition that could be used to justify starving criminal defendants in a substantial number of white collar cases. To our knowledge, this is not a theory that has been previously endorsed. Rather, courts have accepted forfeiture (forget about pre-trial restraint) of salary and other executive compensation in essentially two situations: (1) where the entire enterprise was criminal, such as in the case of narcotics organizations, illegal gambling rings, or Ponzi schemes, or (2) where the job itself was procured by the charged conduct, such as in the case of a job resulting from a rigged election. *See, e.g., United States v. Iacaboni*, 363 F.3d 1, 3 (1st Cir. 2004) (approving post-trial forfeiture of salaries of employees of illegal gambling enterprise); *United States v. DeFries*, 129 F.3d 1293, 1313 (D.C. Cir. 1997) (approving post-trial forfeiture of salaries of union leaders where their election was systemically tainted with fraud, and "but for" the elections would not have received their salaries); *see generally United States v. Gladden*, 78 F.4th 1232, 1250 (11th Cir. 2023) (approving post-trial forfeiture of salary from pharmacy whose business model was to obtain reimbursement payments by billing for medically unnecessary and fraudulent prescriptions). Neither is the case here.

Finally, the warrantless seizure of the account should be subject to particular scrutiny here because it directly threatens Mr. Chu's Sixth Amendment right to counsel of his choice because, as the government is aware, Mr. Chu uses the account to fund his legal expenses in this criminal case. *See generally Luis v. United States*, 578 U.S. 5 (2016); *Kaley v. United States*, 571 U.S. 320 (2014) (citation omitted).

## Conclusion

Mr. Chu respectfully requests that the Court direct the government to release its warrantless seizure of the account.

Respectfully,

 */s/ Matthew L. Schwartz*
Matthew L. Schwartz